Good morning, Your Honors. Keith Ruttman on behalf of Appellant Cleotha Young. I'd like to reserve two minutes for rebuttal if I might. Counsel, please be reminded that the time shown on the clock is your total time remaining. Yes, ma'am. Initially, I would like to start my argument by apologizing to the court for presenting a legally erroneous analysis in my reply brief concerning the career offender provision and its applicability to Mr. Young. I could spend my entire time explaining how that happened. My law clerk has done that. It's very embarrassing, and I'm truly sorry. So for the purposes of this argument, I would like the court to assume that Mr. Young would have been facing a 10-year minimum mandatory sentence absent an enhancement and a guideline range of 292 to 365 months if he were to be sentenced today on the same facts and charges. No problem. What's your best argument? Well, under Liz Araga, which was a C2 case, the court held that there was the authority to consider legislative and judicial developments in the applicability of minimum mandatory sentences. And while that was a C2 case, under C1, the same exact language applies after considering the factors set forth in Section 3553A to the extent they are applicable. So I don't see why C1 and C2 should be treated any differently in this context. Counsel, just so I'm clear, in your brief, you discussed C2, correct? I did, because that's what Liz Araga discussed, so I did discuss that. But you moved for compassionate release under C1, correct? Mr. Young filed that motion pro per, but that was the basis for his motion. Okay, so tell me, that's kind of a disconnect to me, so tell me why, are you arguing under C2 just because you felt the case was stronger for you under C2 and you're asking us to say there's no basis to distinguish those? Is that your argument? Yes, ma'am. I think the analysis under C2 as set forth in Liz Araga would apply equally to a C1 argument or motion because, as I indicated a moment ago, the statutory language is exactly the same. I don't see any policy difference that would suggest a court shouldn't be able to consider changes in the minimum mandatory sentences. And the other circuits that I briefed that did discuss the issue concluded that C1 motions did give the court the authority to consider that. As a matter of fact, Brooker, the second circuit case, I was specifically requested to brief that by the district court upon my appointment following the filing of Mr. Young's motion. Okay, but counsel, it was filed as a C1, right? C1 is recognized as a very high bar. You're not trying to tell us that your client doesn't have to show extraordinary compelling circumstances, are you? Of course not, Your Honor. He does have to show it. Right, and C2 is a lower bar. It's for a very specific class of defendants. That's my paraphrase, but I think that's pretty clear. So what's your best shot, please, about that your client can show meet the C1 bar of extraordinary compelling circumstances? That's what would be helpful to me. Yes, Your Honor. Under the cases that we briefed, while extraordinary rehabilitation alone is not sufficient, changes in the minimum mandatory sentences do reflect legislative and judicial determinations that sentences should no longer be as harsh now as they used to be for the policy reasons that Congress has expressed. Okay. So you would be relying exclusively on this, on the change in the penalty? Well, we asserted there was a trial penalty as well, as well as extraordinary rehabilitation, which I think, in fairness, the district court recognized that Mr. Young had made great strides while in custody. Did the district court absolutely exclude consideration of the new statute? It did, Your Honor. It did, but then it said that even if it could consider them, it wouldn't change the result because of the weight that it gave to Mr. Young's criminal history, and that's the issue that I was hoping to discuss with the court today. In this case, I think you've got a strong argument that the judge, and you've made it, or we've paraphrased it given the earlier argument, you know, if you're right that we were to decide today that this change could be considered under C1, then you've got a different problem because this district court judge said, and he certainly expressed regret about it, but he said he couldn't get past the 3553 factors, I think largely because of your client's criminal history. You want to speak to that? Yes, yes, ma'am. So in the Second Circuit had some language that I think would be helpful here that an appellate court could consider whether a factor relied on by a sentencing court can bear the weight assigned to it, and that's the argument we have with respect to Mr. Young's criminal history. I went back and read the sentencing transcript, which in fairness I should have included in my submission, and I'd be happy to do that if the court wants, but at the sentencing, the court specifically said there was more to the story of Cleotha Young than his criminal history. We're talking about, one, a 24-year-old juvenile unlawful touching when he was age 13. I think Roper considerations apply when we decide how serious a juvenile offense is. We have a 10-year-old robbery where he was a getaway driver, a 19-year-old robbery, and that was counted for career offender because parole violations brought it within the window. Then he had the 11-year-old, 11351.5, at age 26, which in the First Step Act, Congress said changed the definition to serious drug offense, and California had lowered the maximum penalty to four years, so Mr. Young would not even be enhanceable today if he were to be sentenced today, assuming the court deems this retroactive. As far as his gang ties, the court at sentencing also indicated... We would not, counsel, we would not deem anything retroactive. That's not our role here today, to determine what is retroactive and what isn't. So if that's what you're seeking from us, you will not get that. No, ma'am. I'm just trying to assert that under, if Lizarraga is applied to C-1, that the court can consider the changes in, the district court can consider the interim changes in minimum mandatory sentencing schemes as it applies to Mr. Young. If that were the case, if we were to make that ruling in the Chen case, for example, that would be a legal error. By the way, the district court didn't have any guidance on this, about what the Ninth Circuit is or is not going to do, so I don't mean to be casting aspersions, but it would be a do-over for you. I don't know that the result would change. Right? Because we've got in this record a pretty strong indication that the district court was very concerned about the 3553 factors. Well, yes, Your Honor. The district court did indicate at the time of sentencing that there was a lot of good in Mr. Young's background and recognized he had made extraordinary strides while in custody, but felt it could not get past his criminal history. And as I indicated under the Second Circuit case of Dorby, which is located at 616 F. 3rd 174, he assigned undue weight to a criminal history. Excuse me, Counselor, we're almost out of time, but isn't your best argument that we should let the district court decide that on remand? Because we're certainly not going to do that. Judge Wallinson's been pretty adamant. We're certainly not going to do that, and I don't know that it would change, but I'm just trying to make sure I understand your position. You're just asking for a do-over. Yes, I did ask for a remand for resentencing in the context of my... Counselor, you have a minute and 27 seconds left. We'll hear from the government. Good morning. May it please the Court, Daniel Zip on behalf of the United States. Following up on that point, the district court made it very clear here that the 3553 factors did not support release from custody. So, however the court rules on the initial question, there would be no sense in sending him back down to the Second Circuit. Yes, under the court's... Well, I wouldn't say harmless error, but... I think under our precedent, it's not. I think under our precedent, if there's an error in the law, then we do remand for sentencing. So that was a rhetorical question. Wouldn't we have to? Well, under this court's decision in Keller, it held that once a court denies compassionate release under 3553, it doesn't even have to reach the question of whether extraordinary and compelling reasons exist in the first place. You know, there is this... Our case was a little schizophrenic about whether there's an eligibility and the court is supposed to jump to 3553 or look at the C-1, make that determination first. Right, but Keller was very clear that if a court denies it on 3553, that's the end of the game. Well, but we kind of have a different framework now where we have the change in the law regarding the motions that can be filed and the change in the landscape regarding stacking and a big change in the law regarding marijuana. This case bothers me a lot because this young man is serving how much? What was his sentence? 20 years. 20 years sentence for something that wealthy businessmen are making billions of dollars doing. That troubles me. Does that look like justice to you? Your Honor, and this case is more complicated than that. This was a gang member originally charged with an illegal conspiracy involving five murders. But he was convicted. Was he convicted? What was he convicted of? The conspiracy, the marijuana conspiracy, correct? That's correct, Your Honor. That's right. He was taken out and charged separately because he was a career offender because of the fact... But the fact of the matter is the substantive crime for which he is serving 20 years is now the source of billions of dollars for wealthy businessmen. And I'm asking you, does that look like justice to you? No, Your Honor. If he were standing alone charged with accepting a boatload of marijuana and that were the totality of the circumstances here, that would not... Well, why shouldn't the district court have the opportunity to look at this case again to see whether or not in the face of the change in laws and the fact that marijuana is now being sold for billions of dollars, that that might be an external circumstance that might militate toward perhaps lessening his sentence, his 20-year sentence? Your Honor, the court was aware of those changes at the time that it considered this motion. And this is the same district court who presided over the trial of the other gang members and saw the full scope of what was happening with this West Coast Crips. I don't think there's anything that's changed between then and now that would... Well, perhaps, perhaps, and perhaps not. But I'm just, I'm just, I just wonder why the government fights so much sometimes against sentencing reform. This is a sentencing reform statute where Congress wanted prisons to have the opportunity to have judges to look again at their sentences if they can show extraordinary circumstances. And I just wonder why the government fights so hard against that. Certainly, Your Honor. I think a lot of these cases are compelling. You have people who receive these tax sentences that are 75, 100 years longer than they would have received in the first place. It's not our position that that is the right result. It's our position that Congress made the affirmative decision. Well, but in all fairness, the prosecutor makes the decision what to charge. So it's not just Congress. It's also the charging decisions and the plea bargains that are made. So it's not all Congress. And that's why I was curious as to why, you know, oftentimes the prosecutors fight so hard against any effort to take a second look at the sentences to see if they need to be calibrated. Right. I mean, I think in this case our argument is simply this, that Congress did not make the changes retroactive. Maybe they should have, and maybe they should have addressed those situations and made it fair for everyone across the board. But they made the distinct choice here that these changes to the First Step Act stacking and mandatory minimums were only going to apply prospectively. Did they make the choice that they cannot be considered as a factor in the extraordinary factor analysis? Did they make that choice? Your Honor, the statute is essentially silent on that point. Correct. And it's our position that it is not a plausible reading of the statute to say that Congress, on the one hand, explicitly made it non-retroactive, and then silently through this procedural change to the compassionate release section of the statute. Except it's not just silent. It's not just silent, right? I appreciate your going here because C-1 specifically states here are the two things you can't consider, right? And this isn't one of them. I mean, that's the problem, it seems to me. We've got to fill in a little bit. We don't have any guidance from the – that's nobody's fault. We're just sitting here with, I think, a sentencing commission without a quorum. And so, you know, we struggle a bit with that. Right? Yes. And so they've made a new – now Congress has made a new judgment about the appropriate sentences. And I think you would be asking us to disregard that. No, Your Honor. We would be asking you to look at the totality of the statute and to say that, on the one hand, they made it non-retroactive. And that to read that the idea that they also sort of implicitly allowed what they had just disallowed without saying they were doing that in a different section through a sort of procedural toggle and who can bring a compassionate release motion before a district court or the Bureau of Prisons, that's not a plausible reading of the statute. Okay. So you're going to treat this as a C-1 motion because it was filed as C-1? That's what you want us to do? Yes. Okay. Which means he has to show extraordinary and compelling, I think is the phrase. And your position is that this is a gateway. He can't make that. Correct. Since he can't make that, he's done? Yes. Okay. And we should not consider the change in the law. That the district court... The district court did not abuse its discretion when it looked at the statute and said, this is not extraordinary. This is ordinary. When Congress makes prospective changes that don't apply retroactively, that's the ordinary course of events. And that's not an extraordinary reason for me to sort of take the C off. And it can never be. But the disparity, the result, is not a factor that can be considered by the district court as an extraordinary and compelling reason? Is that what you're saying? It's our position that it's the change in law that is not extraordinary. It seems unfair, certainly, that defendants on one side of the line... Changes in law happen all the time. That's not extraordinary. That's routine. Exactly. But the effect, the disparity that is created, is that not at least something that the court can consider? It's not always a disparity. Like I said before, sometimes the court has already, you know, with the parties, has figured out a way to ameliorate some of the severity of the stacking. But sometimes it's impossible. Here, this judge gave the minimum, 240 months. He couldn't have given less, could he? No. Or she. Honestly, I don't remember if it was that. It was a he. This was the basement. Correct. It was right in the middle of the guidelines, but that was the basement. Could I ask you sort of a related question? And I know I get, sometimes I read these transcripts a little too close to you. But the judge said the judge didn't get past the 3553 factors. And, of course, your argument is that the C-1 is a gateway to even get to the 3553. Yes. This judge talked about 3553 first, a little bit out of order. But I think, ultimately, it denied it on both bases, both that there was an extraordinary compelling and even if there was, that the 3553 factor was in support. Right. And I think this judge did put 3553 up top. And, again, I'm not trying to – they just did – they're guessing about what we were going to do, what the United States Supreme Court ultimately would do, what the Sentencing Commission is going to do. So I don't mean to disparage anyone. But I think that is the order in which – and that doesn't even match up with your position. Your position is that the first call is the C-1 call about whether extraordinary and compelling. So if we rule the other way on you, you still think it's not a do-over because of Keller? Correct. Okay. He doesn't even have to address extraordinary and compelling at the outset. I appreciate your patience with my questions. Can I ask a question here about, okay, we're looking at C-1. There's three things the district court considers, the 3553A factors, whether or not there's extraordinary and compelling reasons, and whether or not the applicable policy statements weigh in in one way, weigh for or against the modification. Does it matter what order those three different categories are reviewed by the court? Does it have to be in a particular order? I don't think so. I don't know why it wouldn't matter. I mean, the third one is sort of off the table already because of Arruda, whether the court does 3553 and then discusses extraordinary and compelling. I guess the only way, no, as long as it considers them, and even if it doesn't consider extraordinary and compelling and focuses only on 3553, then that's fine under this. Okay. All right. I appreciate your opinion on that, but I'm not sure I agree with that. I'm not sure Keller was engaged in the analysis that we are doing right now. It would be hard to swear Keller saying 3553 alone is enough without even addressing extraordinary and compelling, with the idea that going 3553 and then addressing extraordinary and compelling, that that would require reversal when Keller did it. Well, as I said, I don't think Keller engaged the analysis that we're trying to do with what can be considered in terms of. I'm looking at Keller, and you want me to take away from this case what exactly? That once a court denies compassionate relief under 3553 that it doesn't have to. C1? Yes. Or does it matter? C1, that it doesn't have to reach the question of extraordinary and compelling. 3553 standing alone is a proper basis for denying compassionate relief. Okay. That's what you said the first time. All right. Thank you. You were consistent. Thank you. Yes. Thank you so much. All right. Mr. Rapato? Yes, ma'am. I think what can't be lost here is the fact that this was a pure conspiracy in its purest form. Mr. Young never laid hands on any marijuana. He withdrew from this conspiracy before it was consummated, but nevertheless he was convicted on the basis of his prior involvement in an unsuccessful attack. But more to the point, the district court, in its sentencing, indicated that the sentencing was really just a ministerial act because of the minimum mandatory sentence. What I would like to emphasize to the court is that first there was Mr. Young, contrary to the government's representation, had no alleged involvement in any of the RICO murders or other crimes that were charged. His only involvement in this conspiracy was as a strong back to unload some marijuana from a boat. The facts do matter. I think the district court made it clear that even if it would have found that the minimum mandatory changes were applicable, it would not have gotten to a sentence reduction because it elevated his criminal history above all else. And under the standard of review that applies, the court can consider whether these factors were given undue weight given their age. The age of a manslaughter conviction was something that led to a definite and firm conviction. It was clear error of judgment. The district court was of two minds of Mr. Young. He was like a Jekyll and Hyde in the courtroom. I think the district court placed undue emphasis on his record, and that is exactly the type of situation that the First Step Act was designed to ameliorate. All right. Thank you, counsel. Thank you, ma'am. Thank you to both counsel for your helpful arguments. The case just argued is submitted for decision by the court.
judges: RAWLINSON, CHRISTEN, Navarro